No. 82-228

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

THE STATE OF MONTANA,

      Plaintiff and Respondent,

  -vs-

JULIE ARBGAST,

      Defendant and Appellant.

---

Appeal from: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln, The Honorable
Robert M. Holter, Judge presiding.

Counsel of Record:

    For Appellant:

        German & McClain, Missoula, Montana
        Keller & Gilmer, Kalispell, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena,
        Montana
        William A. Douglas, County Attorney, Libby,
        Montana

---

Submitted on Briefs: December 16, 1982

Decided: January 20, 1983

Filed: JAN 20 1983

_Ethel M. Harrison_

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant was charged with two counts of criminal sale of dangerous drugs in the District Court, Lincoln County. Defendant pled not guilty at her arraignment on October 5, 1981. On February 5, 1982, defendant changed her plea to guilty to the charge in count two of the information and count one was dismissed pursuant to a plea bargain with the Lincoln County Attorney's Office. On March 15, 1982, the District Court sentenced defendant to five years in prison with three years suspended. On April 7, 1982, defendant moved to withdraw her plea of guilty. After a hearing the District Court denied the motion on May 11, 1982. Defendant appeals.

Defendant was charged with two counts of criminal sale of dangerous drugs which precipitated from defendant's admitted sale of marijuana to Richard Morrow, an undercover investigation officer working in Lincoln County. Defendant claims she first met Morrow at a bar in Eureka, Montana, when she was introduced to him by a mutual friend, Gary Torres. She testified Morrow asked her if she or anyone she knew of would sell him cocaine. Defendant stated she was not involved with drugs nor associated with people who were. Morrow stated by sworn affidavit defendant sold him ½ ounce of marijuana for $25 on their first meeting at the Eureka Tavern.

Defendant testified she sold marijuana to Morrow on their third meeting at the Lincoln County Fair. She claims a friend of hers from Kalispell approached her and stated she had some marijuana to sell. Defendant claims she was then approached by Gary Torres who told her Morrow was looking to buy some drugs. Defendant then obtained some marijuana from her Kalispell friend, exchanged it with Morrow in a car, and gave all of the exchange money to the friend from Kalispell.

Defendant testified she sold marijuana to Morrow a second time when Gary Torres approached her and told her Morrow was

leaving for Washington and wanted to buy more drugs for the road.
Defendant again approached her Kalispell friend and obtained some
marijuana which she exchanged with Morrow. Defendant returned
the exchange money to her friend. Morrow stated defendant
approached him at the Lincoln County Fair seeking to sell mari-
juana for $25 per ½ ounce. He claims he then purchased one full
ounce of marijuana for $45 from her the next night at the same
location.

Defendant was arrested on September 1, 1981, and charged by
information with two counts of criminal sale of dangerous drugs.
On October 5, 1981, defendant appeared and pled not guilty to
both counts. On February 8, 1982, defendant signed a plea
bargain agreement with the Lincoln County Attorney's Office
agreeing to enter a plea of guilty to count two of the infor-
mation in exchange for dismissal of count one. On March 15,
1982, the District Court sentenced defendant to be incarcerated
at Montana State Prison for a term of five years with all but two
years suspended. On April 1, 1982, defendant moved to withdraw
her plea of guilty and to set aside the plea bargain agreement.
The District Court heard the motion on April 19, 1982. On May
11, 1982, the District Court denied defendant's motion.
Defendant appeals.

The issues raised on appeal are:

1. Whether the District Court abused its discretion in
denying defendant's motion to withdraw her guilty plea and
refusing to set aside the plea bargain agreement.

2. Whether the District Court committed reversible error in
its interpretation of section 45-9-101, MCA.

Defendant first contends the District Court erred in denying
her motion to withdraw her guilty plea. The granting or refusal
of permission to withdraw a plea of guilty and substitute a plea
of not guilty rests in the discretion of the District Court and
is subject to review only upon a showing of abuse of discretion.
State v. Huttinger (1980), ____ Mont. ____, 595 P.2d 363, 376, 36

St.Rep. 945.

In Huttinger, supra, this Court stated three factors must be balanced when examining a defendant's attempt to withdraw a plea of guilty:

> "(1) the adequacy of the interrogation by the District Court of the defendant at the entry of the guilty plea as to defendant's understanding of the consequences of his plea, (2) the promptness with which the defendant attempts to withdraw the prior plea, and (3) the fact that the defendant's plea was apparently the result of a plea bargain in which the guilty plea was given in exchange for dismissal of another charge. . . ."

Here, defendant admits the interrogation by the District Court was adequate but claims she did not actually understand the consequences of her response and that she was only answering as instructed by her attorney. Her argument is unfounded. The record indicates defendant and defendant's sister had several meetings with defendant's counsel. The consequences of the charges were thoroughly discussed. That defendant voluntarily entered a guilty plea is without question. Her attempt to withdraw her guilty plea was prompted by the District Court's sentence. We do not find this to be sufficient grounds to reverse the District Court's ruling as a defendant has other remedies to pursue in such an instance.

The State agrees the second factor in Huttinger, the promptness of the motion to withdraw, is not an issue here. The third factor, that the guilty plea was apparently the result of a plea bargain in which the guilty plea was given in exchange for dismissal of another charge, is the exact situation that faces us here. On February 8, 1982, defendant signed a plea bargain agreement whereby she agreed to plead guilty to count two of the information and in exchange the State agreed to dismiss the charge contained in count one of the information. This Court has stated many times that it will not lend its assistance to an accused criminal in escaping the obligations of his agreement after accepting the benefits thereof. State v. Huttinger, supra; State v. Sattler (1976), 170 Mont. 35, 549 P.2d 1080. In

- 4 -

Huttinger we stated: "This is undoubtedly the most troubling aspect of this appeal and is the factor weighing most strongly against allowing Huttinger to withdraw his guilty plea." Although in Huttinger we found this factor did not outweigh those factors which favored allowing the withdrawal, in the present case the State rests upon the heavy arm of the scale. In Huttinger there were serious defects contained in the giving and acceptance of the guilty plea, not present here.

On appeal defendant has questioned the competency of defendant's counsel prior to, and at the time of the guilty plea. However, this Court finds the claim is unsubstantiated in the record. As stated above, defendant was distraught with the sentence pronounced by the District Court and her ill-feelings toward counsel sprang therefrom. Such is not sufficient reason to find ineffective assistance of counsel. See State v. Bigsmoke (1982), _____ Mont. _____, 642 P.2d 1068, 39 St.Rep. 481.

The second issue involves the District Court's interpretation of section 45-9-101, MCA. Several times during the proceedings the District Court stated that defendant was not a candidate for a suspended or deferred imposition of sentence relying upon a misunderstanding that section 45-9-101(4), MCA, requires a minimum imprisonment of one year. An example is from the April 19 hearing:

> ". . . if you can tell me, with a straight face, that the people of the State of Montana haven't said to the judges, 'You better send people who deal in drugs to prison,' I guess I better go back to law school, too. I've -- if you wish to go through the records, Mr. Keller, instead of making some wild comment of somebody who sits on the sideline, that's one thing, but you got every right to do it. But there are all kinds of cases, Mr. Keller: There are possession cases, there's sale cases, we even had a manufacturing case that didn't get to trial. And so, anyway, if that's a challenge, I see it and acknowledge it. But the good people of the State of Montana have said to the judges that, 'You better put the drug-sales people in prison,' and plain and simply, that's this case."

However, section 45-9-101(4), MCA, does not require imprisonment. A prison sentence may be deferred under section

46-18-201(3), MCA:  "Except as provided in 46-18-222, the imposition or execution of the first 2 years of a sentence of imprisonment imposed under the following sections may not be deferred or suspended:   . . . 45-9-101(2) and (3) . . ."  As defendant was sentenced under section 45-9-101(4), MCA, she was not barred from a suspended or deferred imposition of sentence by section 46-18-201(3), MCA.  The State concedes section 45-9-101(4), MCA, does not require mandatory imprisonment as the District Court believed, but claims the sentence of five years in Montana State Prison with all but two years suspended was within the confines of the statute and that the District Court's misreliance was not prejudicial to defendant.  We disagree.  In light of the facts it appears the District Court's belief that the charge required imprisonment was prejudicial to defendant.

We order that the sentence be vacated and remand for resentencing.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

- 6 -