NO. 91-130

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

        Plaintiff and Appellant,

  -vs-

HARVEY WALTER NIEMI,

        Defendant and Respondent.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Patrick L. Paul, County Attorney; Steven Hudspeth,
        Deputy, Great Falls, Montana

    For Respondent:

        Daniel Donovan, Great Falls, Montana

Submitted on Briefs: September 19, 1991

Decided: February 19, 1992

Filed:

Clerk

FILED

FEB 19 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Justice Karla M. Gray delivered the Opinion of the Court.

The State of Montana appeals a judgment of conviction and sentencing order from the Eighth Judicial District, Cascade County, which sentenced Harvey Walter Niemi (Harvey) to ten years imprisonment for attempt (deliberate homicide) and two years imprisonment for use of a dangerous weapon, both sentences suspended except for fifteen days already served. The District Court further sentenced Harvey to 4000 hours of community service. We affirm on another ground.

We rephrase the issues presented on appeal to the following:

Did the District Court err when it suspended Harvey's sentences of ten years imprisonment for attempt (deliberate homicide) and two years imprisonment for use of a dangerous weapon under §§ 46-18-201(5) and -221(3), MCA?

Harvey and Katherine Jean Niemi (Jean) were married on June 10, 1966. Following their marriage, the couple resided in Great Falls, Montana.

Both Harvey and Jean were employed as teachers: Jean retired in 1988 and Harvey retired in 1989. Through the years, Harvey and Jean generally were viewed as a happily married couple. Many perceived Harvey to be a mild-mannered, non-violent, and kind person. Prior to January 1990, Harvey's criminal record consisted of one minor traffic violation.

On January 9, 1990, Harvey and Jean began a normal day at home. Following a noon-time meal, Harvey told Jean that he was going to a local store to purchase some remodeling supplies. However, Harvey did not leave the home. He went to the basement, changed his clothing, put on an old pair of eyeglasses and a pair of panty hose over his head, and placed rubber gloves on his hands. He then waited for Jean to enter the basement. When Jean entered the basement to use a bathroom, Harvey stabbed her several times with a knife, wounding her in the head, chest, stomach, and hand. Following the stabbing, Harvey expressed remorse and said he could not understand how he could have committed such an offense. Jean recovered from the stab wounds.

On January 23, 1990, the State charged Harvey by information with one count of attempt (deliberate homicide). Harvey pled not guilty to this charge on February 14, 1990. A jury trial was held on November 13 to November 20, 1990. At the trial, Harvey testified that for years he had repressed anger concerning Jean. He further testified that at the time of the stabbing, he felt he was not in his body, but rather, was above and behind his body, watching what was happening. Dr. William Stratford, a psychiatrist, testified that at the time of the stabbing, Harvey experienced a dissociative state of mind. On November 20, 1990, the jury found Harvey guilty of the charged offense.

Prior to sentencing, Harvey moved the District Court to find that § **46-18-222,** MCA, exempted him from the mandatory minimum sentencing penalties contained in § **45-5-102(2),** MCA, the sentencing provision for deliberate homicide, and § **46-18-221(1),** MCA, a sentencing provision for use of a dangerous weapon. Harvey argued that § **46-18-222(2)** and **(3),** MCA, exempted him from the mandatory minimum sentences because at the time he stabbed Jean **1)** his mental capacity was significantly impaired, and **2)** he was acting under unusual and substantial duress. At the sentencing hearing, Harvey abandoned his argument that he was acting under unusual and substantial duress at the time he stabbed Jean but maintained that his mental capacity was significantly impaired.

Following oral argument, the District Court found that Harvey's mental capacity at the time he stabbed Jean did not exempt him from the mandatory minimum sentences under §§ **45-5-102(2)** and **46-18-221(1),** MCA. The District Court sentenced Harvey to ten years imprisonment for attempt (deliberate homicide) and two years imprisonment for use of a dangerous weapon, both sentences suspended except for fifteen days already served. The District Court further sentenced Harvey to 4000 hours of community service.

The State filed its notice of appeal regarding Harvey's sentence on January **15, 1991.** Harvey likewise filed a notice of appeal on March **8, 1991.** On June **4, 1991,** the State filed a brief, which in part anticipated and discussed issues Harvey could raise

4

in his cross-appeal. On August 6, 1991, Harvey filed a brief that resembles the format of a cross-appeal. On August 13, 1991, Harvey moved this Court to stay his appeal pending the outcome of the State's appeal under Montana Rule of Appellate Procedure **3**. On September 9, 1991, this Court granted Harvey's request for a stay of his appeal.

Because Harvey's cross-appeal has been stayed by this Court, issues raised by both the State and Harvey in their respective briefs that pertain to Harvey's cross-appeal will not be discussed herein. Accordingly, we will limit our discussion to the following issue:

Did the District Court err when it suspended Harvey's sentences of ten years imprisonment for attempt (deliberate homicide) and two years imprisonment for use of a dangerous weapon under §§ **46-18-201(5)** and **-221(3)**, MCA?

The District Court at the sentencing hearing held that Harvey's mental capacity at the time he stabbed Jean did not exempt him from mandatory minimum sentencing under § **46-18-222,** MCA. The District Court acknowledged, however, that it was a "close question" as to whether Harvey's mental capacity was significantly impaired at the time of the offense under § 46-18-222(2), MCA. The District Court stated:

> When you look at what happened here, the overall event
> that occurred it is almost incredible and it is difficult
> to believe that anybody in their right mind in full

possession of their mental faculties would have committed this offense under these circumstances. . . . And although there has been a psychiatric explanation of what happened, this dissociative state, the jury did not accept that offered evidence in determining guilt of Mr. Niemi. Although the required proof, I think, to establish this mental capacity exception, I don't think it requires proof beyond a reasonable doubt as do the elements of the criminal offense. But, I really question whether -- there is certainly some indication, certainly some testimony here that the mental capacity of Mr. Niemi was impaired at that time when this offense occurred and maybe for a short period of time before it occurred when he was waiting. But, I find it difficult to accept that Mr. Niemi's mental capacity was so significantly impaired to justify an exception from mandatory minimum sentence.

. . .

This is the most unusual criminal case that I have presided over in my 14 years on the bench. It's very bizarre. Serious and yet the people that are involved are exemplary people and it just borders on mind boggling.

The District Court further held that incarceration in this instance would be inappropriate in light of Harvey's stellar community service record, the nature of the offense, the unlikelihood that Harvey would ever attempt to harm Jean again, Harvey's remorse, and his lack of a previous criminal record. Thereafter, the District Court, <u>inter alia</u>, sentenced Harvey to the mandatory minimum sentence of ten years imprisonment for attempt (deliberate homicide) under § 45-5-102(2), MCA, and the mandatory minimum sentence of two years imprisonment for use of a dangerous weapon under § 46-18-221(1), MCA; the court suspended both sentences except for fifteen days already served. The District Court cited State v. Arbgast (1983), 202 Mont. 220, 656 P.2d 828,

6

as authority for its ability to suspend Harvey's mandatory minimum sentences.

The State argues that _Arbaast_ is not applicable to these facts. The State further argues that the District Court erred by suspending the sentences in this case under §§ **46-18-201(5)** and **-221(3), MCA.** Section **46-18-201(5), MCA,** provides "[e]xcept as provided in **46-18-222,** the imposition **or** execution of the first 10 years of a sentence of imprisonment imposed under **45-5-102** may not be deferred or suspended." Section **46-18-221(3), MCA,** provides that the mandatory minimum sentence for use of a dangerous weapon "may not be deferred or suspended, except as provided in **46-18-222."** The State argues that because the District Court held that § **46-18-222,** MCA, did not apply, §§ **46-18-201(5)** and **-221(3),** MCA, require the court to sentence Harvey to serve twelve years imprisonment for attempt (deliberate homicide) and use of a dangerous weapon.

We agree that _Arbgast_ is not applicable here. In _Arbgast_, suspension of the defendant's sentence was **not** specifically limited by statute to one of the exceptions contained in § **46-18-222,** MCA. Here, both statutes under which Harvey was sentenced expressly prohibit suspension of the sentence <u>unless</u> § **46-18-222,** MCA, applies.

However, following a careful review of the record, we hold that the sentences at issue herein can be suspended because

7

Harvey's mental capacity at the time of the offense was significantly impaired under § 46-18-222(2), MCA. Section 46-18-222(2), MCA, provides in part that a defendant's mandatory minimum sentence may be suspended if "the defendant's mental capacity, at the time of the commission of the offense for which he is to be sentenced, was significantly impaired, <u>although not so impaired as to constitute a defense to the prosecution</u>." [Emphasis added.] Here, the jury did not find that Dr. Stratford's testimony concerning Harvey's mental state supported a defense to the offense. However, § 46-18-222(2), MCA, still allows a court in sentencing a defendant to suspend mandatory minimum sentencing if it finds the defendant's mental capacity was significantly impaired but not so impaired as to constitute a defense. We emphasize again that the District Court stated that the issue of whether Harvey was significantly impaired was a "close question." Moreover, we are persuaded by Dr. Stratford's testimony, which details how Harvey experienced a dissociative state of mind at the time of the offense. We therefore affirm the result of the District Court's judgment of conviction and sentencing order on the ground that Harvey is exempt from mandatory minimum sentencing under § 46-18-222(2), MCA.

_____
Justice

8

We concur:

_____

_____

_____

_____
                Justices

February 19, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Hon. Marc Racicot, Attorney General
                , Asst. Atty Gen
Justice Building
Helena, MT  59620

Patrick Paul, Cascade County Attorney
Steven Hudspeth, Deputy County Attorney
Cascade County Courthouse
Great falls, MT  59401

Daniel Donovan
Attorney at Law
P.O. Box 6573
Great Falls, MT  59406

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy