No. 80-77

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

_____

IN RE WILLIAM E. McNAIR

_____

ORIGINAL PROCEEDING:

Counsel of Record:

For Petitioner:

William E. McNair, Pro Se, Deer Lodge, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
J. Fred Bourdeau, County Attorney, Great Falls, Montana
Michael G. Barer, Deputy County Attorney, Great Falls, Montana

_____

Submitted on briefs: April 15, 1980

Decided: AUG 25 1980

Filed: AUG 2 5 1980

Thomas J. Kearney
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

William McNair petitioned this Court in an original proceeding to vacate, set aside, or correct a sentence imposed upon him by the District Court, Cascade County. He brought his petition pursuant to section 46-21-101, et seq., MCA, alleging that he did not voluntarily and intelligently enter a guilty plea, and that he was denied effective assistance of counsel because counsel did not discuss with him the possibility of the defense of mental defect or disease. We find that under the facts of this case, petitioner is not entitled to relief.

On June 23, 1971, petitioner was arrested in connection with a robbery of narcotics from Osco Drug in Great Falls, Montana. At the time of the arrest, petitioner was unconscious as a result of a drug overdose, and was subsequently hospitalized. On July 2, 1971, petitioner appeared in court without counsel. At that time, counsel was appointed and petitioner was ordered transferred to Warm Springs State Hospital for a psychological evaluation. The evaluation indicated that petitioner was competent to assist and participate in his own defense.

With counsel present, petitioner pleaded guilty to the charges on September 15, 1971. Pursuant to a recommendation by the county attorney, he was sentenced to two years in Warm Springs for drug treatment, with the remainder of his sentence to be served in Deer Lodge State Prison.

In February, 1980, 8½ years after sentencing, petitioner brought this motion before this Court for post-conviction relief.

For purposes of this petition, we will address two issues:

(1) Does the doctrine of laches apply so as to prevent a defendant from challenging the validity of his sentence, pursuant to section 46-21-101, MCA?

(2) Under the circumstances of this case, is petitioner entitled to any post-conviction relief?

The Cascade County Attorney urges this Court to dismiss

the defendant's petition for the reason that it is meritless and for the reason that his attempt to withdraw his guilty plea is not timely. He argues that defendant is barred, by laches, from raising these issues 8½ years after he was sentenced. We find that defendant is not barred from raising the issues by motion to this Court.

Section 46-21-102, MCA, provides that "[a] petition for . . . relief may be filed at any time after conviction." This Court has not previously looked at this section but the legislative history of the comparable federal statute and the Uniform Post-Conviction Procedure Act dictates the conclusion that there is no time limit in which to initiate an action.

The post-conviction hearing statutes are an attempt by the legislature to consolidate all of the common-law statutory remedies normally available to challenge a sentence. Montana's act is based in part on the Illinois Code of Criminal Procedure, and in part on the Uniform Act, but the Montana Code is silent as to the source of the section in question. The Illinois Code of Criminal Procedure sets forth a 20-year statute of limitations for initiating an action, unless petitioner alleges facts showing that the delay is not due to his culpable negligence. See 38 Ill. Code of Crim.Proc. § 122-1. Montana did not choose to adopt this section, but did enact a statute with language similar to section 1 of the 1955 Uniform Post-Conviction Procedure Act and the federal act, 28 U.S.C. 2255. The Commission comments to the Uniform Act indicate that a statute of limitations for filing was considered, but rejected, because of a question of constitutionality. And in considering a claim by the government that a petition under 28 U.S.C. 2255 was not filed at the proper time, the United States Supreme Court in Heflin v. United States (1959), 358 U.S. 415, 420, 79 S.Ct. 451, 454, 3 L.Ed.2d 407, 411 (Stewart J., concurring), noted that under the federal statute, a sentence could be attacked only by a prisoner presently serving, but that the section comparable to section 46-21-102, MCA, "means

- 3 -

that, as in habeas corpus, there is no statute of limitations, no res judicata, and that the doctrine of laches is inapplicable." See also, Connêrs v. U.S. (9th Cir. 1970), 431 F.2d 1207; C. Torcia, Wharton's Criminal Procedure § 648 (12th ed. 1976).

In accord with these authorities, we find that the Montana legislature did not intend to impose an absolute time constraint on the filing of an application for post-conviction relief.

Our finding that petitioner is entitled to file his petition at any time does not, however, necessitate a finding that he is entitled to the relief sought. Numerous federal courts have considered the problem of delay, in §2255 motions, with many courts finding that delay can have a negative effect on the movant:

> "While motions under 28 USC §2255 may be made at any time, the lapse of time affects the good faith and credibility of the moving party." Aiken v. United States (M.D. N.Car. 1961), 191 F.Supp. 43, 50, aff'd 296 F.2d 604 (4th Cir. 1961). See also Raines v. United States (4th Cir. 1970), 423 F.2d 526, 531.

In a case such as the one before us, we find that the 8½ year delay certainly raises questions of defendant's credibility in asserting his claims. Based on the records, files and affidavits presented to us, we deny the petition. In doing so, we find the view of the District Court, District of Columbia, persuasive:

> "Obviously, the burden of proof on a motion to vacate a sentence under 28 U.S.C. §2255 is on the moving party, because there is a presumption of regularity of the conviction. The burden is particularly heavy if the issue is one of fact and a long time has elapsed since the trial of the case. While neither the statute of limitations nor laches can bar the assertion of a constitutional right, nevertheless, the passage of time may make it impracticable to retry a case if the motion is granted and a new trial is ordered. No doubt, at times such a motion is a product of an afterthought. Long delay may raise a question of good faith." United States v. Bostic (D. D.C. 1962), 206 F.Supp. 855, 856-57.

In addition to the problem of good faith, we note that long delay may prove to be highly prejudicial if the State is forced to try a case 8½ years later. The practical problems of dying witnesses, fading memories, and changing government officials demand that the applications for relief must

- 4 -

be made promptly.  See Desmond v. United States (1st Cir. 1964), 333 F.2d 378, 381.  In Pacelli v. United States (2nd Cir. 1978), 588 F.2d 360, 365, cert.denied, 441 U.S. 908, 99 S.Ct. 2001, 60 L.Ed.2d 378 (1979), the court cited Rule 9(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts:

> "A motion for relief made pursuant to these rules may be dismissed if it appears that the government has been prejudiced in its ability to respond to the motion by delay in its filing unless the movant shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the government occurred."

That court noted that a judge is clearly entitled to take delays into account in ruling on a motion for relief.

The petitioner's allegations of error on which he bases his petition all are premised on the involuntary and unintelligent nature of his guilty plea.  He asserts that he had incompetent counsel who did not advise him of the penalties involved, and he contends that he would not have entered a guilty plea if his counsel had advised him of the possibility of raising the issue of mental defect or disease.  He questions his competence to stand trial.

We note at the outset that petitioner was sent to Warm Springs for an evaluation by the District Judge.  That evaluation, conducted by Dr. M. F. Gracia, found defendant "competent and able to assist and participate in his own defense," although noting defendant's long history of drug and alcohol abuse.  Prior to this evaluation, defendant conversed briefy with his appointed counsel, and following his release from Warm Springs, defendant consulted with his attorney three more times prior to the entry of the guilty plea.  On September 14, 1971, defendant and his counsel appeared before the Honorable R. J. Nelson.  The record shows that at that time, the defendant received, and was read, a copy of the information and the District Judge informed him of his right to take at least 24 hours more before pleading in order to adequately understand the

- 5 -

charges. Defendant's counsel requested the continuance, as the record shows:

> "MR. OVERFELT: Your Honor, in order that the defendant may be fully apprised of the nature of the charge against him and the consequences of that particular charge, we request the court at this time for an additional twenty-four hours, in which to enter the plea."

Counsel's records, which were presented to us by affidavit show that defendant desired to enter a guilty plea pursuant to a plea bargain if an arrangement could be worked out to get him into a drug treatment program. It appears from these same records that counsel had done initial research into the possible defenses of drug and alcohol addiction or mental defect, and had indicated to defendant a poor chance for him to use such a defense. On this basis, the decision was reached voluntarily by defendant to plead guilty.

A plea was not entered by defendant until the following day. At that time the judge inquired into the voluntary nature of the plea. The record provides in part:

> "THE COURT: Well, Mr. McNair, before I can accept a Guilty plea, I must ascertain that it's voluntarily made. In other words, that you're not being coerced or forced to make this plea.
>
> "THE DEFENDANT: No, your Honor, I'm not being forced.
>
> "THE COURT: All right, and you understand that I don't care what anyone said to you, as a Court I cannot make you and will not make you any promises as to sentence?
>
> "THE DEFENDANT: I realize this."

Following a presentence investigation, defendant was sentenced on September 29, 1971, with the first part of the sentence to be served at Warm Springs for drug treatment. Defendant's counsel indicates by affidavit that this sentencing was pursuant to a recommendation of the county attorney, based on plea negotiations between counsel and the county attorney.

As the record shows, defendant has waited 8½ years before making an attempt to withdraw his guilty plea. This Court has previously noted that where a District Court has determined that

- 6 -

a plea was voluntarily entered, withdrawal of that plea is a matter within the discretion of the court. A long time interval before moving to withdraw the plea makes the situation less favorable to the defendant. In the case of State v. Lewis (1978), ____Mont.____, 582 P.2d 346, 352, 35 St.Rep. 1089, 1096, this Court adressed the issue of laches as it applies to the withdrawal of a guilty plea:

> "Moreover, the claim of laches is good against the defendant here because it is quite probable the records upon which the pleas of guilty were entered are now missing or their whereabouts unknown and the availability of witnesses would of course be a question. See State v. Sattler (1976), ____Mont.____, 549 P.2d 1080, 33 St.Rep. 475."

See also, State v. Nance (1947), 120 Mont. 152, 184 P.2d 554; State v. Sattler (1976), 170 Mont. 35, 549 P.2d 1080.

We are faced with that problem here. We have before us allegations of incompetent counsel leading to an invalid guilty plea. It is hard to imagine that this defendant was unable to determine for 8½ years that he did not enter a voluntary and intelligent guilty plea. He alleges one unsuccessful attempt to work with the University of Montana Defender Project in 1974, at a time after he had served his sentence and was in Deer Lodge for a later conviction. The record does not substantiate this claim, nor does it appear that he made any other attempts for five more years, until filing this petition in 1979.

This Court noted in State v. Lewis, supra, that "[i]t has become common place in recent times for defendants seeking post conviction relief to assail their representation by counsel during criminal proceedings as inadequate or deficient." We remarked there and we reiterate:

> " . . . Such an attack however must be grounded upon facts which appear in or are easily deduced from the record and which go beyond the mere conclusory allegations in the defendant's affidavit. There must be a showing of actual ineffectiveness on the part of counsel. Digiallonardo v. Betzer (1973), 163 Mont. 104, 515 P.2d 705." ____Mont.____, 582 P.2d at 352-353, 35 St.Rep. at 1097.

We have before us the court files and records and the affidavits of both petitioner and petitioner's counsel. Based on these records we have determined that petitioner's motion should be denied without a hearing. Section 46-21-201, MCA. The petitioner has raised no issues which we would expect to require a different resolution if an evidentiary hearing were ordered now--8½ years after the plea and sentencing. He has made no showing in his petition that he has any additional information to put before the Court/can or that he produce any witnesses with different recollections or any additional records which may have been lying dormant for all this time. In viewing all the circumstances, we are convinced that petitioner was adequately represented in 1971 and that he was fully competent to enter a voluntary and intelligent guilty plea. It is unnecessary to reopen the case.

The petition is denied.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 8 -